Barbara K. Parmenter
5409 Ivy Street
Springfield, Oregon 97478
Telephone (541) 937-1234
FAX NO. (458) 201-8976
e-mail:bparmenter97478@gmail.com

Case: 1:17-cv-01388
Assigned To : Unassigned
Assign. Date : 7/12/2017
Description: Pro Se Gen. Civil (F Deck)

UNITED STATES J. BARRETT PRETTYMAN DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| BARBARA K. PARMENTER, | CASE NO. 09-60875-fra11 |
|---|---|
| Debtor, | DEBTOR IS FILING HER MOTION FOR DERIVIATIVE REMOVAL OF THE DISTRICT OF OREGON BANKRUPTCY CASE NO. 09-60875-fra11 IN EUGENE, OREGON TO THE J. BARRETT PRETTYMAN UNITED STATES DISTRICT COURT IN THE DISTRICT OF COLUMBIA UNDER TAYLOR vs. LOVE, 415 f. 2d 1118 (1969) |
| BARBARA K. PARMENTER | |
| Petitioner. | |
| | A QUESTION OF FEDERAL LAW ARISES UNDER THE STATE AND DISTRICT OF OREGON COURT'S & GOVERNMENT STRUCTURES; IF SO CHANGED, DID THE RESTRUCTURE RESULT IN ARTICLE III CONSTITUTIONAL VIOLATIONS AND ENABLE THE DENIAL OF THE VERIFIED COMMUNICATIONS DISABLED DEBTOR-PETITIONER'S FIRST, FIFTH, AND FOURTEENTH CONSTITUTIONAL AMENDMENT RIGHTS; THE DENIAL OF HER RIGHT TO DUE PROCESS, HER RIGHT TO EQUAL PROTECTION UNDER THE LAW; HER RIGHT TO ACCESS THE |

1

COURTS; WAS SHE DENIED EFFECTIVE LEGAL REPRESENTATION? DID THE STATE CIRCUIT & FEDERAL DISTRICT & BANKRUPTCY COURTS VIOLATE PETITIONER'S CIVIL RIGHTS UNDER TITLE 18, SECTIONS 241,242, & 249; & HER FAIR HOUSING RIGHTS UNDER 42 USC 3601?; HER DISABILITY CIVIL RIGHTS UNDER 504 OF THE REHABILITATION ACT, THE COMMUNICATIONS INTREPRETORS ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE JUDICIAL GUIDE?

IS THE ALIANCE BETWEEN THE STATES OF WASHINGTON AND OREGON BARS MADE BY BANKRUPTCY JUDGES FRANK KURTZ AND FRANK ALLEY III TO SELL PROPERTIES IN BANKRUPTCY TO CLIENTS IN DUBAI LEGAL? IS IT ETHICAL? AND SHOULD FULL DISCLOSURE BE REQUIRED? JURY TRIAL REQUESTED.

1.

NOTICE OF SPECIAL VISITATION

Please take notice that Barbara K. Parmenter hereby makes a special visitation and is demanding all rights at all times and waiving no rights at any time, especially her right to challenge personal jurisdiction in the first instance and to preserve her right to due process of law.

2.

2

It is a fundamental constitutional guarantee that all legal proceedings will be fair and that one will be given notice of the proceedings and an opportunity to be heard before the government acts to take away one's life, liberty, or property.

3.

Debtor-Petitioner is a disabled person with multiple traumatic brain injuries. She has cognitive disabilities, a central processing disorder and she cannot adequately comprehend oral communications. Debtor has to have complicated communications put into written form so she can read to comprehend what has been conveyed. Sometimes she has to reread the communications several times or she may have to read it over time. Debtor has vision, hearing, vestibular disorders and Post-Traumatic Stress Disorder.

4.

Debtor is a person with communications disabilities …as defined in the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, THE Judicial Guide and the Communications Interpreter Act (CIA) and as verified by the enclosed written and signed documentations from her health care providers. "Their expertise support Ms. Parmenter's assertion she has a "disability" as defined under the Americans with Disabilities Act", Susan Cox Hammonds RN, MSN, FNP.

5.

Affidavit of 7-14-2010 Susan Hammond RN, MSN, FNP) Each of these providers make it clear that from their testing and treatment of Ms. Parmenter, that she

suffers from a disabling auditory processing disorder while maintaining above average to superior intelligence.

6.

TAYLOR vs. LOVE, 415 F. 2d 1118 (1969)

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

"The language of 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as a venue, whether the court in which it was filed and personal jurisdiction over the defendants or not. The section is thus in accord with general purpose which has prompted many of the procedural changes of the past few years-that of removing whatever obstacles may impede an expeditors and orderly adjudication shows a desire on the part of the plaintiff not to begin his case and thereby toll proper diligence on the part of the plaintiff which such statues of limitations were made, Congress by the enactment of 1406(a), recognized that "the interest of justice" may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as "time-consuming and justice defeating technicalities." It would at the least partially frustrate this enlightened congressional objective to import ambiguities into 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired. Goldawr, Inc. v. Helman, 369 U.S. 463, 465-467 (1962), 82 S. Ct. 913, 915-916, Footnotes omitted.

7.

## FEDERAL QUESTION JURISDICTION

Federal courts are generally said to have "federal question" jurisdiction, which means that federal courts will hear cases that involve issues touching on the Constitution or other federal laws. The source of the "Federal Question" jurisdiction can be found in the Constitution. Article III states that the "judicial power shall extend to all cases, in law and equity, arising under the constitution, the laws of the United States, and Treaties made, or which shall be made, under their authority.

8.

TAKEN FROM THE OREGON STATE BAR'S SEPTEMBER 11, 2010

JOINT INTERIM MEETING OF SENATE AND HOUSE JUDICIARY COMMITTEES

On the third line from the bottom of page one it states:

UNIQUE TRAITS, the Oregon State Bar is UNIQUE in a number of areas which are noted in this document as follows:

1.) The Oregon State Bar (OSB) unlike the other 49 bars in the United States is not a private bar.

2.) The OSB is a public corporation and an instrumentality of the Oregon Judicial Department. The IRS Manual requires the bar's referral to the National Office of Applications for Tax Exempt Status. Instrumentality means it is usually owned or controlled by the state government. An instrumentality is usually income tax exempt.

9.

## OFFICERS OF THE COURTS WITH CONFLICTING INTEREST

The web page on the Oregon State Bar (hereafter OSB), states that all Oregon judges and practicing attorneys are officers of the courts and are required to be members of the integrated Oregon State Bar which is a part of the Oregon Judicial Department that is a State of Oregon agency and a part of the state government. The self-insuring Oregon State Bar through the creation of the Bar's Professional Liability Fund in 1977 provides mandated minimal malpractice coverage for Oregon based attorneys.

10.

Petitioner contends that the self- insuring aspect of the Oregon State Bar's Professional Liability Fund creates a conflict of interest with Oregon citizens.

Because Petitioner is an Oregon citizen she must file any claims or proceedings that has happened in Oregon in an Oregon Court. Any attorney representing Parmenter must be a member of the "Integrated Oregon State Bar". If Parmenter hires an out of state Pro Hac Vice attorney she must also hire an Oregon attorney as co-counsel who must be a member of the Oregon State Bar and the co-counsel must have a controlling interest in the case.

11.

The Judges for Oregon State Circuit and District and Bankruptcy Courts are or were members of the Oregon State Bar. The OSB is maintained and operated from annual dues paid by Oregon State Bar members. Any judgment or damage claim and the costs for legal representation and litigation expenses for defending

the Oregon State Bar are expenses for the self- insuring bar and the costs are passed through to the Bar members. The member's annual dues are calculated from all operating and maintenance expenses and then proportionately adjusted annually.

12.

Debtor-Petitioner is reported as being the only person to have sued the Oregon State Bar for damages which she did Pro Se on November 4, 2004. Petitioner sued the Oregon State Bar for Gross Negligence in the Reinstatement of Justus Buck Humphreys in Oregon Circuit Court for the County of Multnomah Case No. 070100338. Debtor-Petitioner had to sue Pro Se as no Oregon State Bar member would sue their own self-insuring bar.

13.

In discovery phase of her case against the Oregon State Bar is was learned that Humphreys was reinstated to the Oregon State Bar with less than the normally required investigations. Upon reinstatement someone at the Bar gave Humphreys aliases to conceal his true identity by tampering with public records, a crime.

14.

If the defendant like Humphreys, is an Oregon attorney the litigation expenses and any judgment are expenses for the Bar's Professional Liability Fund. The Professional Liability Fund is a part of the Bar that sells and provides mandatory malpractice coverage to bar member attorneys. The judge(s) presiding over any of

7

these cases including any damage claim against the Bar is a dues paying Oregon State Bar member therein having an undisclosed and concealed conflict of interest as in Petitioner's case. The attorneys representing the bar are dues paying bar members. The Pro Hac Vice attorney representing Petitioner in her suit against the Oregon State Bar had to engage a co-counsel Oregon State Bar dues paying member attorney with controlling interests in the case. The co-counsel that Petitioner had to pay for her Pro Hac Vice attorney neglected to disclose that his firm, The Harrang Long Gary Rudnick Law Firm, also represented the Oregon State Bar. The Pro Hac Vice attorney had collected well over $300,000.00 from Petitioner and then withdrew from her cases.

15.

Oregon State Bar member Judge Jerome LaBarre presided over the legal counsel withdrawal in Petitioner's case against the Oregon State Bar and ruled the Pro Hac Vice attorney had not completed enough legal work to justify the fees he had collected from Petitioner and ruled the Pro Hac Vice attorney could not try to collect any additional funds from Petitioner and jurisdiction of the case was retained in the Oregon Circuit Courts. " Petitioner" was given six years in which to file a complaint with the *Oregon State Bar arbitration counsel* for the return of her overcharged and overpaid fees. It is very unlikely Oregon State Bar member attorneys would assist Petitioner in recovering her overpaid fees after she sued the Bar that these same attorneys financially support with paying their mandatory annual dues.

16.

The Multnomah County Court provided a real time captioning accommodation one time for a short deposition. The second time in a hearing the opposing counsel and Judge Jerome LaBarre turned the real time into being transcribed in short hand so Petitioner could not comprehend the proceedings. The court then designated the real time record as the official record, an Americans with Disabilities violation, and Petitioner had no idea what transpired other than her case was dismissed. There are no surprises in the Oregon kangaroo courts. If Petitioner ever received accommodations they were rendered unusable or worse.

17.

The bankruptcy court record will show the court paid the $130,000.00 to the Pro Hac Vice Dallas, Texas attorney Boyd, and in doing such ignored Oregon Circuit Court Judge LaBarre's rulings and violated the laws handed down in The Sterns v. Marshall Supreme Court ruling. Debtor-Petitioner had entered LaBarres' ruling in the bankruptcy case and had objected to the claim being an adversarial claim because it was a state issue and had been adjudicated. Attorney Boyd had never filed an appeal. Boyd filed the illegal foreign judgment originally by intervention into Debtor's Legal Negligence case against Humphreys in the Circuit Court for the County of Lane Case No. 160900760. The fee had been paid years after the Sterns v. Marshall Supreme Court ruling in 2011 and without the court ever notifying or advising Debtor-Petitioner of any adversarial hearing.

18.

Neither the Oregon State Bar, nor any Oregon Judge, or any Oregon attorney Parmenter has conversed with has ever disclosed to Petitioner that a conflict of interest exists between her and the OSB, Bar members, Oregon Department of Justice or the State of Oregon. By law, the Bar and its members are required to disclose any conflicts of interest and judges with conflicts of interest, bias or prejudice are required to recuse.

19.

No Oregon State or State District judge has recused even upon Petitioner's motions for cause. Judge Frank Alley III informed Petitioner when she petitioned for him to recuse that she could not recuse a federal judge.

20.

Prior to the current foreclosure proceedings Petitioner had requested and paid for her bankruptcy case to be reopened in May of 2015. Petitioner then filed several adversarial hearings against mortgage companies Wells Fargo, N.A., Nationstar Mortgage, Ocwen, and Bayview all who were claiming they had valid and foreclosure enforceable notes and trusts deeds which the bankruptcy court had already denied and the documents had been rejected and the claims were invalid. Debtor's properties were revested to her free and clear of any liens and the companies were enjoined from trying to collect on the properties and from Debtor. See Bankruptcy Court ORDER 6/10/2011.

21.

Bankruptcy Judge Frank Alley III dismissed Petitioner's adversarial claims and the

Neither the Oregon State Bar, nor any Oregon Judge, or any Oregon attorney Parmenter has conversed with has ever disclosed to Petitioner that a conflict of interest exists between her and the OSB, Bar members, Oregon Department of Justice or the State of Oregon. By law, the Bar and its members are required to disclose any conflicts of interest and judges with conflicts of interest, bias or prejudice are required to recuse.

19.

No Oregon State or State District judge has recused even upon Petitioner's motions for cause. Judge Frank Alley III informed Petitioner when she petitioned for him to recuse that she could not recuse a federal judge.

20.

Prior to the current foreclosure proceedings Petitioner had requested and paid for her bankruptcy case to be reopened in May of 2015. Petitioner then filed several adversarial hearings against mortgage companies Wells Fargo, N.A., Nationstar Mortgage, Ocwen, and Bayview all who were claiming they had valid and foreclosure enforceable notes and trusts deeds which the bankruptcy court had already denied and the documents had been rejected and the claims were invalid. Debtor's properties were revested to her free and clear of any liens and the companies were enjoined from trying to collect on the properties and from Debtor. See Bankruptcy Court ORDER 6/10/2011.

21.

Bankruptcy Judge Frank Alley III dismissed Petitioner's adversarial claims and the

mortgage companies proceeded to the State of Oregon Circuit Court for the County of Lane with their foreclosures and Nationstar Mortgage, L.L.C. Case No 15CV21825 and Wells Fargo, N.A. Case No. 161421755 secured judgments allowing them to foreclose upon Debtor's properties in the State of Oregon Circuit Court for the County of Lane.  These schemes have continued for over six years with multiple and different lenders on several of Petitioner's properties that were re-vested back to her free and clear.

22.

If or when Petitioner manages to prevent a mortgage company from securing a right to foreclose in the State Circuit Court the mortgage backed security is sold again and a new professed mortgage lender or servicer proceeds with their foreclosure again in the State of Oregon Circuit Courts.

23.

NationStar Mortgage L.L.C. Case No. 15CV2185 and Wells Fargo, N.A. Case No 161421755 both secured judgments to foreclose in the State of Oregon Circuit Court for the County of Lane. Wells Fargo, N.A. failed to show up for the hearing but nevertheless received a judgment to foreclose from Oregon Circuit Court Judge Jay McAlpin. Oregon State Bar member Judge McAlpin has made several questionable ruling against Petitioner previously and she has now been able to recuse Judge McAlpin from hearing any case involving Petitioner or that she has been dragged into where Debtor contends the courts are being used as a weapon against her.

24.

With the current foreclosures proceeding in the Oregon Circuit Courts for the County of Lane Petitioner motioned the United State Bankruptcy Court for the District of Oregon to enforce the Supremacy Clause hoping the court would have to protect Petitioner's property rights as had been adjudicated in the District of Oregon Bankruptcy Case. No. 09-60875-fra11, under the Trustees Final Amended Approved Plan and the Courts Order of 6/10/2011.

25.

The record will show that the United States Bankruptcy Court and Bankruptcy Judge Frank Alley III previously failed to uphold the 6-10-2011 ORDER and The Trustee's Approved Plan and dismissed Debtor's Adversarial Motions against the already denied mortgage lien holder's claims.

3.) Judge Alley III awarded the Pro Hac Vic attorney's state court denied false claims for $130,000.00 that was clearly a State Court judgment ruled upon several years before the bankruptcy attempted filing and Judge Alley never held an adversarial hearing on a closed Circuit Court Case judgment..

4.) Judge Frank Alley refused to recuse for proven bias and prejudice and he financial conflict of interest between the Bar and Debtor.

5.) Judge Alley III was instrumental in having her case sent to the incorrect BAP where Judge Kurtz presided.

6.) Judge Kurtz had joined Judge Alley III in forming the two state bar alliance to sell properties in bankruptcy to clients in Dubai.

7.) Supposed Debtor's confiscated properties were sold to mid-eastern parties and no accounting was ever provided to the supposed Debtor.

8.) Judge Alley III refused the supposed Debtor's accommodations for her verified communications disability and struck her Motion for the Participating Attorney Involvement Grant through the Legal Services Corporation from the record.

9.) Judge Alley struck Supposed Debtor's Offer of Proof from the record after it was date stamped. The Offer of Proof supported Debtors claims that the attorney Bradley Baker was not honestly representing Debtor and Baker had committed fraud upon the court along with Umpqua Bank's attorney David Mills and Judge Frank Alley III.

26.

There are and have been numerous other mortgage companies attempting to foreclose on Petitioner's BOBBI LLC owned free and clear properties. Two of Petitioner's Limited Liability Co. and Trust owned larger free and clear properties with a combined net value exceeding two and a half million dollars have been unlawfully foreclosed upon in The State of Oregon Circuit Courts for the County of Lane. Petitioner could not represent the Trusts or the LLC's that owned the properties. Petitioner cannot access effective legal representation in Oregon and she cannot secure accommodations nor can she access the courts. See C.E. Pope Equity Trust v. United States, 818 P. 2d 696, 697-98 (9th Cir. 1987)

27.

Debtor had been advised by the U.S. Court Trustee and OSB member to retain

Attorney Baker a month and a half *after she had filed a small business chapter 11 and while she was knowingly incompetent.* Debtor was incompetent when she entered into a contract with attorney Baker. Debtor now knows she could not have legally filed a small business chapter 11 for BOBBI L.L.C. or any of the several Trusts because only an attorney can represent the corporations and trusts . The chapter 11 Bankruptcy was a misfiled document by a known and an acknowledged incompetent person.

28.

The Oregon law on proving incompetence was never followed. Judge Alley III claimed a "personal chapter 11 was like a conservatorship. He did not follow court rules because he wanted to appoint a trustee and he had no legal reason to justify appointing a trustee.

29.

The court changed the supposed Debtor's filing date from March 5, 2009 to March 9, 2009 as proven by the court records apparently hoping Debtor would not know that on the true date she filed her case it could not have been a legal case because she had not taken the required credit counseling course.

30.

In order for Debtor to find out what had transpired in the Bankruptcy Case she had to order, pay for and read the transcripts.

31.

Petitioner's cognitive disabilities have been worsened after another attempt

upon her life on November 21, 2016 and she was deprived of oxygen.  She requests any untimely submittals or any delayed responses be considered an accommodation and a qualified extension due to her worsened disabilities.

32.

Petitioner prays the J. Barrett Prettyman United States District Court will intervene in this egregious discrimination against the disabled Petitioner and remove her reopened Bankruptcy Case 09-60875-fra11 to the J, Barrett Prettyman U.S. District Court that can take jurisdiction and if needed redirect her case to where she can secure legal representation, her constitutional rights, her civil rights and her disability civil rights and in a Circuit other than the Ninth Circuit.  Due to the intense involvement of prior Oregon State Bar member judges within the United States Court of Appeals for the Ninth Circuit there is a lot of resentment and prejudice projected against Petitioner.

Respectfully submitted this 15th day of June,

_____

Barbara K. Parmenter, Pro Se "By necessity not by choice."